ORDERED.

Dated: July 11, 2018

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Amit Bhalla,                                                    Case No. 8:16-bk-00265-RCT
                                                                               Chapter 7

          Debtor.
_____/

China Central Television, China
International Communications Co., LTD.,         Adv. No. 8:16-ap-00285-RCT
TVB Holdings (USA), and Dish Network LLC,

          Plaintiffs,
v.

Amit Bhalla,

          Defendant.
_____/

**MEMORANDUM DECISION AND ORDER SUSTAINING DEBTOR'S CLAIM
OF EXEMPTION AND DISSOLVING CONTINUING WRIT OF GARNISHMENT**

After trial, the court considers Debtor Amit Bhalla's ("Mr. Bhalla") Claim of Exemption and Request for Hearing (the "Claim of Exemption") (Doc. 93), Mr. and Mrs. Bhalla's (together, the "Bhallas") Motion to Dissolve Writs of Garnishment (the "Motion") (Doc. 105),[1] Judgment

---

[1] The Bhallas quickly entered an "objection" to the writs at issue. (Doc. 98). The Motion supplemented the prior

Creditors China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc. and Dish Network L.L.C. ("Creditors") Objection to Claim of Exemption (Doc. 100), and Creditors' response to the Motion (Doc. 106).

These matters are based on two post-judgment writs of garnishment. The writs were issued pursuant to a judgment against Mr. Bhalla entered by this court on August 18, 2017. The first writ is directed to JPMorgan Chase Bank, N.A. ("Chase") and the second is a continuing writ of garnishment for salary or wages directed to Mr. Bhalla's employer Creative Innovation Solutions Corp. ("Creative") (together, the "Writs").[2] Mr. Bhalla objects to the continuing writ, claiming the exemption under Fla. Stat. § 222.11 for wages earned by a "head of family".[3] The Bhallas seek to dissolve the writ as to their Chase bank accounts, asserting that the funds in the bank accounts were (1) either traceable to Mr. Bhalla's exempt wages or Mrs. Bhalla individually, or (2) exempt as property held as tenants by the entireties.

This decision and order addresses Mr. Bhalla's claim to the "head of family" exemption under Fla. Stat. § 222.11 and the continuing writ of garnishment directed to Creative. The court will address the Motion and the writ directed to Chase by subsequent order.

Procedural History

In this proceeding, Creditors sought a declaration that the debt owed to them by Mr. Bhalla was non-dischargeable under 11 U.S.C. § 523(a)(6) ("willful and malicious injury") and damages for the alleged wrongful conduct.[4] The court granted Creditors' motion for summary judgment and entered a non-dischargeable judgment against Mr. Bhalla in the amount of $4,440,234.22.[5]

---

objection. Later, the Bhallas further supplemented the record with affidavits and exhibits in support of their Motion and the Claim of Exemption. (Docs. 107, 108, and 109).
[2] Doc. 81 (writ as to Chase) and Doc. 87 (continuing writ).
[3] Doc. 93; *see* Fla. Stat. §§ 222.11(1)(c), (2).
[4] Doc. 1. The adversary proceeding is based on sizeable, prepetition claims for copyright and trademark infringement.
[5] Doc. 72 (judgment) and Doc. 73 (memorandum opinion and order granting summary judgment).

After entry of the judgment, the Writs issued in due course. Creative answered the continuing writ, stating Mr. Bhalla is an employee who is paid once per month. Mr. Bhalla's gross monthly earnings are $5,000; his net pay, after required deductions, is $4,017.50.[6]

### Background Facts

The Bhallas testified that Mr. Bhalla is the primary breadwinner for their family, which includes themselves, two young children, and Mr. Bhalla's elderly parents. The family depends on Mr. Bhalla's income to meet their basic needs. Mr. Bhalla's income comes from Creative. He receives a gross annual salary of $60,000, paid in equal monthly installments.[7] Creative also provides regular shareholder distributions to the Bhallas, usually in the amount of $5,000 paid about every four weeks. Mrs. Bhalla is a primary care physician; however, her practice underperformed and lost money during 2017.

The draft of the Bhallas' 2017 federal tax return[8] supports the testimony. Line 7 of the Form 1040 reports wages of $60,000, and Line 12 shows a business loss of -$34,374. The wages are Mr. Bhalla's wages from Creative, and the Schedule C business loss is attributable to Mrs. Bhalla's medical practice. Line 17 of the Form 1040 reflects income of $70,011, consisting of the stockholder distributions received from Creative.

Creative, an internet affiliate marketing company, was formed by Mr. Bhalla and his friend and business partner, Lalit Aggarwal, in or about May 2014.[9] Both men made equal capital contributions at the company's formation, and each received a 50% stake in the enterprise. The board of directors has at all times consisted of Mr. Bhalla and Mr. Aggarwal. Neither partner may

---

[6] Doc. 94.
[7] D. Ex. 4. The payment date varies slightly month to month. But during the course of 2017, there are 12 equal payments of $4,017.50 reflected on the payment transaction report.
[8] D. Ex. 15.
[9] D. Ex. 12.

3

make a major decision without the other.  Should a dispute arise, the operating agreement requires that the dispute be mediated.[10]  Since Creative's formation, the partners have maintained a collegial and productive working relationship and they have never required the services of a third-party mediator.  Mr. Bhalla and Mr. Aggarwal are not related.

Mr. Bhalla is Creative's only employee.  In August 2015, Mr. Bhalla emailed Mr. Aggarwal to request that he receive a salary as Mr. Bhalla felt that he was putting more work into the company and wanted to be compensated for his extra efforts.[11]  Mr. Bhalla was not certain Mr. Aggarwal would agree to his request.  But after some back and forth, Mr. Aggarwal agreed, and Mr. Bhalla began to receive his $5,000 monthly compensation in September 2015.  He has received his salary each month since.  Mr. Bhalla has never agreed to the garnishment of his wages, be it in writing or otherwise.

The payment of Mr. Bhalla's salary is controlled by Mr. Aggarwal, who does not draw a salary from Creative.  Mr. Bhalla's salary is compensation for services performed in the operation of the business.  Were he to cease these services, Creative would be required to hire someone else.  The services Mr. Bhalla performs are separate and apart from his responsibilities as a shareholder.  Mr. Bhalla estimates he spends approximately 20 hours per week on shareholder duties over and above the 40 hours per week he spends on the duties for which he draws the salary.

Mr. Bhalla has a written employment agreement with Creative.[12]  Though dated September 1, 2015, the agreement was not executed until March 2018, after the Writs were served.  Mr. Aggarwal drafted the agreement.  The agreement's terms were not necessarily the subject of extensive negotiations upon its drafting, but the terms are consistent with discussions that Mr.

---

[10] D. Ex. 12.
[11] D. Ex. 10.  The emails suggest that the topic of whether Mr. Bhalla should receive a salary may have first been raised by Mr. Aggarwal, and Mr. Bhalla, in fact, expressed initial reservations.
[12] D. Ex. 11.

Bhalla and Mr. Aggarwal had over the course of Mr. Bhalla's employment.[13] Mr. Bhalla concedes that some terms of the agreement were plainly inapplicable upon execution.

As to his salary, Mr. Bhalla proposed the amount based on what "seemed fair" and not on any type of market comparison. Nonetheless, Mr. Aggarwal did not merely acquiesce to the request, and instead deliberated on the matter.[14] No attorneys were involved in the preparation of the employment agreement. Mr. Bhalla did not feel the need for extensive discussions as he felt Mr. Aggarwal had properly documented their agreement.

Discussion

Mr. Bhalla responded to the Writs claiming the head of family exemption codified in Fla. Stat. § 222.11. The statute provides that "[d]isposable earnings of a head of a family, which are greater than $750 a week, may not be attached or garnished unless such person has agreed otherwise in writing." Fla. Stat. § 222.11(2)(b). Mr. Bhalla is the "head of family", and he has not consented to any garnishment of his earnings.

The issue framed by the parties is whether the compensation claimed by Mr. Bhalla as wages satisfies the statutory definition of "earnings" given his ownership interest in and his participation in the management of Creative. As the judgment debtor, Mr. Bhalla bears the burden of proving that he qualifies for the exemption. *See Cadle Co. v. G & G Assocs.*, 757 So. 2d 1278, 1279 (Fla. Dist. Ct. App. 2000).

Fla. Stat. § 222.11(1)(a) defines "earnings" as "compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." Both Florida and federal courts interpreting the statute have held that "proceeds from a debtor's business . . . do not constitute 'earnings.'" *Tobkin v. Calderin (In re Tobkin)*, 638 F.

---

[13] *See also* Cr. Ex. 10 (transcript of Mr. Aggarwal's deposition), at 22:14–23:2.
[14] D. Ex. 10; *see* Cr. Ex. 10, at 30:16–31:4.

App'x 822, 824 (11th Cir. 2015) (listing cases). "[T]he relevant inquiry is often whether a person's employment is a salaried job or is in the nature of running a business." *Brock v. Westport Recovery Corp.*, 832 So. 2d 209, 211 (Fla. Dist. Ct. App. 2002).

Where the judgment debtor has "an 'arms-length employment agreement' with his business providing for a set salary or wages, the 'earnings' exemption applies." *In re Tobkin*, 638 F. App'x at 824 (citing *Brock*, 832 So. 2d at 212). The compensation must be "regular," and neither the amount nor timing of the compensation subject to the debtor's discretion. *See Brock*, 832 So. 2d at 212; *see also In re Harrison*, 216 B.R. 451, 454 (Bankr. S.D. Fla. 1997). When a debtor has a direct or indirect ownership stake in the putative employer, the court should consider the degree of control the debtor exerts over the business. *See In re McDermott*, 425 B.R. 848, 851–52 (Bankr. M.D. Fla. 2010); *In re Manning*, 163 B.R. 380, 382 (Bankr. S.D. Fla. 1994).

Here, the court finds that the $60,000 annual compensation that Mr. Bhalla claims as wages are "earnings" and, therefore, exempt under Fla. Stat. § 222.11. The payments are set in the gross amount of $5,000 per month, and are made regularly in or about the end of each month. Any irregularity in the date of the payment is attributable not to Mr. Bhalla but to Mr. Aggarwal, who initiates and controls the payments. The terms of Mr. Bhalla's compensation were the subject of a negotiated agreement and are documented in the written employment agreement. Mr. Bhalla receives this compensation for the 40 hours per week of personal services he performs for Creative, not for any time he spends on his responsibilities as shareholder. Although the Bhallas and Mr. Aggarwal receive the same in terms of shareholder distributions, only Mr. Bhalla, and not Mr. Aggarwal, receives a salary. And were Mr. Bhalla to stop the salary-based services he performs, Creative would need to employ another qualified individual.

Creditors do not necessarily dispute these facts. Although they acknowledge the existence

of the agreement to pay Mr. Bhalla a "salary", Creditors argue instead that Mr. Bhalla's alleged wages are not "earnings" as Mr. Bhalla is not employed pursuant an "arms-length employment agreement." Their argument is premised upon Mr. Bhalla's ownership of and control of Creative. Creditors also emphasize that the written employment agreement was prepared without the assistance of counsel and then only after the Writs were served, most of its terms were not negotiated at the time the agreement was drafted, and some of the terms were admitted by Mr. Bhalla to have never applied at all.

Creditors arguments are not wholly without merit. They correctly note facts and circumstances that certainly raise concerns regarding the terms of Mr. Bhalla's employment and require the court to examine the matter closely. But having looked closely, the court concludes that Mr. Bhalla receives his salary under the terms of an "arms-length employment agreement."

Creditors control argument is based upon a faulty premise. The shareholder agreement clearly provides that "[a]ll business operations and decisions" require unanimous consent and in the event of a disagreement, a third-party mediator is to be used.[15] Nonetheless, Creditors argue that Mr. Bhalla has *de facto* control, suggesting that Mr. Aggarwal simply acquiesced to Mr. Bhalla's request for a salary and his other demands regarding the business.

But the email correspondence tells another story. The emails indicate that the topic of a salary for Mr. Bhalla had been the subject of prior conversations initiated by Mr. Aggarwal, who recognized the "extra hours" Mr. Bhalla was contributing to Creative and had begun to suspect Mr. Bhalla felt that he was not being compensated fairly. Further, Mr. Aggarwal testified at his deposition that he agreed to Mr. Bhalla's proposed salary figure as after consideration he felt that the request was reasonable. There is nothing in the record to suggest that Mr. Aggarwal was

---

[15] D Ex. 12.

unduly pressured by Mr. Bhalla or incapable of countering Mr. Bhalla's proposal.

Creditors point out that the employment relationship was amicable and that the partners never required the services of a mediator. Mr. Bhalla and Mr. Aggarwal are fortunate that they enjoy a good working relationship and never have had to resort to the use of a mediator. The court will not infer any undue influence or manipulation merely from the fact that the two partners were amicable and productive.

Simply put, the record reflects that Mr. Bhalla did not have the authority to control Creative, and the fact that business matters were conducted amicably and without incident is not a basis for this court to infer control where none exists.

Creditors place great emphasis, however, on the facts surrounding the preparation of the employment agreement, namely the timing in relation to service of the Writs and the lack of meaningful negotiations regarding its terms. Taken in isolation, the facts support Creditors' claim. But Mr. Bhalla explained that the terms of his employment had been negotiated over time, beginning importantly with the initial request for a salary, and that the agreement prepared by Mr. Aggarwal adequately documented what had been agreed to over time.[16] The court credits Mr. Bhalla's testimony and finds that the written agreement, though executed after service of the Writs, largely formalized what had been negotiated and agreed to nearly two and half years earlier.

The cases upon which Creditors rely are distinguishable. Unlike here, those cases involved debtors without an employment agreement providing for receipt of regular compensation,[17]

---

[16] The court notes that in reference to the head of family exemption, the case law does not suggest that the terms of a judgment debtor's employment other than those governing compensation are relevant. This makes some sense given the language of Fla. Stat. § 222.11, which requires only that the compensation be paid in "sum certain" and "for personal services or labor".

[17] *See In re McDermott*, 425 B.R. at 850 (debtor-husband had no employment contract); *Pellegrino v. Koeckritz Dev. of Boca Raton, LLC*, No. 08-80164-CIV, 2009 WL 1437813, at *4 (S.D. Fla. May 15, 2009), *report and recommendation adopted*, No. 08-80164-CIV, 2009 WL 1798382 (S.D. Fla. June 24, 2009) (debtor had no employment agreement); *In re Manning*, 163 B.R. at 381 (debtor had no employment contract); *cf. In re Harrison*, 216 B.R. at 452 (noting that although the employment agreement provided for a fixed salary figure, the debtor testified

debtors who admitted having control over either or both the amount or timing of their compensation,[18] debtors whose putative employers were entirely family owned,[19] or debtors whose partners received identical compensation found to be in the nature of equity distributions rather than regular wages.[20]

Upon consideration of the "totality of the circumstances",[21] the court concludes that Mr. Bhalla is entitled to claim the exemption for wages provided in Fla. Stat. § 222.11. Accordingly, the continuing writ must be dissolved.

For these reasons, it is **ORDERED AND ADJUDGED**:

1. The Claim of Exemption (Doc. 93) is SUSTAINED. Judgment Debtor Amit Bhalla is entitled to the exemption for wages provided by Fla. Stat. § 222.11.

2. The Continuing Writ of Garnishment Against Salary or Wages directed to Garnishee Creative Innovation Solutions Corp., dated February 1, 2018 (Doc. 87) is dissolved.

3. The court reserves ruling on the Motion (Doc. 105), and shall address the Post-Judgment Writ of Garnishment directed to Garnishee JPMorgan Chase Bank, N.A., dated January 18, 2018 (Doc. 81) by separate order.

Attorney Suzy Tate is directed to serve a copy of this Order on interested parties that are not registered CM/ECF users and to file proof of service within 3 days of its entry.

---

that the amount fluctuated).

[18] *See In re McDermott*, 425 B.R. at 850–51 (debtor-husband largely determined his own compensation and would not take a paycheck if cash on hand was insufficient); *In re Harrison*, 216 B.R. at 453 (debtor testified that the amount of his salary varied based upon available cash on hand and was determined by debtor and his partner, who also drew a similar salary); *In re Manning*, 163 B.R. at 381 (debtor determined his own compensation and would not take a paycheck if cash on hand was insufficient); *cf. Pellegrino*, 2009 WL 1437813, at *4–*5 (some of debtor's compensation varied based, in part, upon availability of funds).

[19] *See In re McDermott*, 425 B.R. at 849 (debtors owned 66% of the company outright and the rest indirectly through a retirement plan); *In re Manning*, 163 B.R. at 381 (debtor's wife owned 100% of the business).

[20] *See In re Harrison*, 216 B.R. at 453 (debtor testified that the amount of his salary varied based upon available cash on hand and was determined by debtor and his sole partner, who also drew a similar salary).

[21] *McDermott v. Chambers (In re McDermott)*, No. 6:10-CV-890-ORL-31GJK, 2011 WL 740727, at *2 (M.D. Fla. Feb. 24, 2011) ("Courts examine the totality of the circumstances to determine whether [Fla. Stat. §] 222.11 head-of-household exemption is applicable." (citing *Brock*, 832 So. 2d at 211)), *aff'g In re McDermott*, 425 B.R. 848.